IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLE BLACKSTONE, DARCY CELESTE, BETTY ROBERGE-HASKELL, and CHERYL SIKORA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DEARBORN LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. 21-cv-1201<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Current and former short-term and long-term disability claim analysts bring claims against Dearborn Life Insurance Company ("Dearborn") for failure to pay overtime wages under the Fair Labor Standards Act ("FLSA") and Maine law. The Court conditionally certified a collective action for the FLSA claims pursuant to a stipulation by the parties. Dearborn now moves to decertify the collective and for summary judgment. Plaintiffs oppose both motions and have filed for class certification under Federal Rule of Civil Procedure 23 for Plaintiffs' Maine law claim. As explained below, Plaintiffs are exempt from overtime pay under the FLSA and Maine law. Therefore, Dearborn's motion for summary judgment [76] is granted, and Plaintiffs' motion for class certification [71] and Defendant's motion for decertification of collective action [80] are denied as moot.

1

## I. Procedural Background

Plaintiffs Nicole Blackstone, Darcy Celeste, Betty Roberge-Haskell, and Cheryl Sikora sued Defendant Dearborn on behalf of themselves and a putative class of other current and former employees at Dearborn. [1]. Plaintiffs allege that Dearborn classified all claims analysts as exempt employees under the FLSA and Maine law and denied them overtime. The parties stipulated to conditional certification of a collective action under 29 U.S.C. § 216(b) and moved for conditional certification and for court-approved distribution of notice. [17]. The Court granted the parties' motion and conditionally certified a collective of "[a]ll current and former employees of Dearborn … who in the last three years were paid a salary and classified as exempt under the FLSA and worked … [as a] STD Claims Associate[,] STD Claims Analyst[,] Senior STD Claims Analyst[,] LTD Claims Associate[,] LTD Claims Analyst[,] or … Senior LTD Claims Analyst" (collectively "Claims Analysts" or "CAs"). [18]; [19]. A court-approved notice was sent to Dearborn Claims Analysts. [17-1]; [71-51] ¶ 26. Currently, there are 22 members in the collective, including named Plaintiffs Blackstone, Celeste, Roberge-Haskell, and Sikora (collectively, "Plaintiffs"). [1-1]; [5-6]; [7]; [9]; [20-24]; [48-49]; [54]; [66].

After discovery, Plaintiffs filed a motion for class certification under Federal Rule of Civil Procedure 23 for Plaintiffs' overtime claims under Maine law. [71]. Dearborn filed a motion for summary judgment arguing that there is no genuine dispute of material fact that Plaintiffs are exempt from overtime under the

2

administrative exemption of the FLSA and Maine law. [76]. Dearborn also filed a motion to decertify the FLSA collective. [80].

## II.   Factual Background[1]

The following facts are undisputed unless otherwise noted.[2]

Dearborn offers insurance products including short-term disability ("STD") insurance and long-term disability ("LTD") insurance to employer-sponsored or voluntary group plans. [78] ¶¶ 1–2, 4. Dearborn employs individuals in the following roles to adjudicate claims made under Dearborn's STD and LTD insurance policies: STD Claims Associate, STD Claims Analyst, Senior STD Claims Analyst, LTD Claims Associate, LTD Claims Analyst, Senior LTD Claims Analyst. *Id.* ¶ 3.

Plaintiffs are 22 former or current employees of Dearborn who worked in one or more of the Claims Analyst roles out of Dearborn's Portland, Maine office.[3] *Id.* ¶ 7. As Claims Analysts, Plaintiffs' primary job responsibility was to adjudicate whether

---

[1] This Court takes these facts from the Dearborn's Statement of Facts [78], Plaintiffs' Response to Dearborn's Statement of Facts [93], Plaintiffs' Statement of Additional Facts ("SOAF") [91], the Dearborn's Response to Plaintiffs' SOAF [100], and various exhibits the parties have submitted in connection with the Dearborn's motion for summary judgment.

[2] Dearborn points out that Plaintiffs' response and its Local Rule 56.1 statement do not comply with the requirements of the rule. [99] at 5–8. Where appropriate, the Court notes what evidence it relies upon in making its decision and ignores evidence that does not comport with the requirements of the Local Rules. The Court also notes that disputes over "the characterization of [Plaintiffs'] primary duty—that is, whether the primary duty is administrative in nature" is not a fact dispute, since whether Plaintiffs are exempt "is a question of law." *Williams-Bell v. Brit. Standards Inst., Inc.*, 532 F. Supp. 3d 640, 646 (N.D. Ill. 2021); *see also, e.g., Marting v. Crawford & Co.*, No. 00 C 7132, 2006 WL 681060, at **1–2 (N.D. Ill. Mar. 14, 2006) (insurance claims employee exempt where, "[a]lthough the parties offer sharply contrasting pictures, they largely rely on the same body of evidence").

[3] The summary judgment record includes evidence on all 22 Plaintiffs as Dearborn deposed each of them. *See* [78]; [91]; [93]; [100].

3

claims for STD or LTD benefits made under Dearborn policies should be paid. *Id.* ¶¶ 3, 11. Plaintiffs usually have more than 80—and often over 100—claims assigned to them at any given time. *Id.* ¶ 24. Plaintiffs administer Dearborn's STD or LTD policies issued to various customers by investigating, evaluating, and rendering decisions on claims for STD or LTD benefits made under such policies after ensuring that the claimant satisfied the requirements of the applicable STD or LTD policy. *Id.* ¶ 14.

Dearborn provides a variety of resources to assist Plaintiffs with their claims adjudication including its claims-management system, FINEOS, that allows Plaintiffs to document individualized information about each particular claim, the STD or LTD insurance policy that applied to the claim, create case notes, and document a plan with steps to resolve the claim. *Id.* ¶ 68–70. Additionally, Plaintiffs have written resources to assist in their claims adjudication, like workflows, template letters and emails, telephone call outlines, and other job aids. *Id.* ¶ 75.

Plaintiffs were trained on how to move a claim through the FINEOS claims system. [93] ¶ 78. Plaintiffs were required to follow Dearborn's training and procedures: Plaintiffs gathered facts about the claimant, including information about the claimant's dates of employment, date of claimed injury or illness, dates of treatment, type of employment, insurance policy effective date, and whether any waiting periods had expired. [78] ¶ 26. Plaintiffs were required to collect any missing information that was not provided by the claimant, claimant's doctor, or employer. [93] ¶ 21. Plaintiffs reviewed the policy's language and medical records, to determine

4

(1) whether an insured was eligible for benefits, and if so, (2) the amount of benefits an insured would be paid and length of time the benefits would be paid. [78] ¶ 20.

Plaintiffs' annual salaries as CAs for Dearborn ranged from $42,745.00 to $76,238.00, which equates to approximately $822.02 to $1,466.12 per week. *Id.* ¶ 10. Dearborn classified Plaintiffs as administrative employees that were exempt from overtime under the FLSA and Maine's state wage law. *Id.* ¶ 9.

## III. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*,

477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

**IV. Analysis**

The FLSA requires that covered employers pay certain employees an overtime premium "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). The FLSA exempts from overtime requirements "any employee employed in a bona fide … administrative … capacity." 29 U.S.C. 213(a)(1). U.S. Department of Labor ("DOL") regulations define an administrative employee as one who is (1) "compensated on a salary … of not less than $684 per week"; (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

Similarly, under Maine law, non-exempt employees must be paid overtime for all hours worked over 40 in a workweek. 26 Me. Rev. Stat.§ 664(3). As Plaintiffs note, Maine courts look to federal law when interpreting its overtime laws, including

6

whether employees qualify as an "administrative" worker exempt from Maine's overtime laws.[4] [92] at 6 (citing *Gordon v. Me. Cent. R.R.*, 657 A.2d 785, 786-87 (Me. 1995)). Thus, the Court evaluates summary judgement on claims under the FLSA and Maine law using federal law.

Dearborn bears the burden to demonstrate by a preponderance of the evidence that there is no genuine issue of material fact regarding whether the administrative exception applies to Plaintiffs. *Verkuilen v. Mediabank, LLC*, No. 09 C 3527, 2010 WL 2011713, at *1 n.1 (N.D. Ill. May 19, 2010), *aff'd*, 646 F.3d 979 (7th Cir. 2011). Plaintiffs do not dispute the first element that they received a salary of not less than $684 per week. [77] at 3–4; [92]. However, Plaintiffs dispute the second and third elements, the "directly related" and "discretion and independent judgment" requirements, respectively. 29 C.F.R. § 541.200(a). The Court finds that Dearborn has met its burden of showing that there is no genuine dispute of material fact that Plaintiffs satisfy these elements and are exempt as administrative employees.

### A. Primary Duties Directly Related to the Management or General Business Operations of Dearborn or Its Customers

First, Dearborn must show that there is no genuine dispute of material fact that Plaintiffs' "primary dut[ies]" as Claims Analysts is "the performance of office or

---

[4] Plaintiffs also claim, without support, that Dearborn's burden as to the administrative exemption is "even heavier" under Maine law because it requires employees to "customarily and regularly" exercise discretion and independent judgment, and the DOL merely requires that employees' primary duty "include[]" this requirement. This undeveloped argument is waived. *See* [92] at 6 ("Plaintiffs do not separately analyze the Maine claims below. A ruling for Plaintiffs under the FLSA applies with equal force to their claims under Maine Law."); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (conclusory and underdeveloped arguments are waived).

non-manual work directly related to management policies or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.214. The term "'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Further, "the performance of office or non-manual work directly related to the management of general business operations" means that the employee must "perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). "Insurance" is expressly included as an example of work that qualifies for the administrative exemption. 29 C.F.R. § 541.201(b).

Plaintiffs argue their primary duty is not "directly related to management or general business operations" of Dearborn or its customers because Dearborn hired them to provide "claims administration services that it sells to its customers." [92] at 7-8, 14-15. Thus, Plaintiffs argue they are not hired to "manage or run [Dearborn's] business," but were "production workers that provided the very service Dearborn sold to its customers." *Id*. at 7-8. The Court disagrees.

The Seventh Circuit held that insurance adjusters are "are service providers, and the service they provide is the administration of insurance claims," which "directly relate[s]" to "administrative operations." *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 872–73 (7th Cir. 2008). Moreover, the court in *Julian v. MetLife, Inc.*, No. 17-CV-957 (AJN), 2021 WL 3887763, at *10 (S.D.N.Y. Aug. 31, 2021), considering

8

claims specialists (not adjusters) rejected an argument similar to Plaintiffs' as "mental gymnastics." This Court does not view the argument as harshly but still agrees that Plaintiffs assisted Dearborn's insurance customers with administering claims made by their employees and/or other claimants under the STD or LTD insurance policies *issued to them by Dearborn*. *See id.* ("handling LTD benefits claims … is 'directly related to the management of general business operations' of Metlife or its customers"); *see also Roe-Midgett*, 512 F.3d at 872 (holding plaintiffs who administered insurance claims were exempt and rejecting argument that insurance adjusters were production workers because they were "neither working on a manufacturing line nor 'producing' anything in the literal sense"). In short, Plaintiffs, like claims adjusters, "administer[] the policies 'produced' by" Dearborn and perform administrative work under the FLSA's administrative exception. *Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 872–73 (7th Cir. 2008). Thus, the Court finds that there is no genuine dispute of material fact that Plaintiffs' "primary duty" is handling STD and LTD benefit claims, and this duty is "directly related to the management of general business operations" of Dearborn or its customers. 29 C.F.R. § 541.214.

    **B.    Exercise of Discretion and Independent Judgment with Respect to Matters of Significance**

Next, Dearborn must show that there is no genuine dispute of material fact that Plaintiffs' work "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). Exercising discretion and independent judgment "involv[es] the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various

9

possibilities have been considered." 29 C.F.R. § 541.202(a). It does not include performing "clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work." 29 C.F.R. § 541.202(e). Under the regulations, claims adjusters (as opposed to claims analysts) "generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation." 29 C.F.R. § 541.203(a).

Plaintiffs contend that they did not perform enough of the job duties listed in the DOL's insurance adjuster example to be exempt. [92] at 11. The Seventh Circuit has determined that adjusters need not "perform each and every activity listed," and "lack[ing] some of the responsibilities traditionally associated with claims adjusting" does not preclude exempt status. *Roe-Midgett*, 512 F.3d at 873–74. Here, Plaintiffs are required to gather information including the claimant's dates of employment, date of claimed injury or illness, dates of treatment, type of employment, insurance policy effective date, and medical records, as well as any missing information that was not provided by claimant, claimant's doctor or employer. Plaintiffs must also evaluate that information to determine whether the claimant is eligible to claim benefits under the policy, whether the claimant has a disability covered by the policy, whether there

10

are discrepancies or "red flags," the amount of benefits to paid, the anticipated length of disability, and whether to approve the claim (or recommend approval of the claim). Overall, Plaintiffs perform at least three tasks listed in the "insurance claim adjuster" example in the regulations: "interview[] insureds," "evaluat[e] and mak[e] recommendations regarding coverage of claims," and "determin[e] … total value of a claim." Thus, Plaintiffs were required to use their training and Dearborn's resources to "mak[e] a decision after the various possibilities have been considered" based on the facts of the claim. 29 C.F.R. § 541.202(a).[5]

Finally, Plaintiffs argue that Dearborn strictly curtails the CAs exercise of any discretion or independent judgment through (1) Dearborn's written processes and "guidelines" and (2) supervision, i.e., approval in certain circumstances, overturned determinations, and audits. [92] at 17–18. However, discretion can be exercised even in "exceedingly regulated workplace[s]" that are "procedure driven, routine, and strictly controlled." *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 374 (7th Cir. 2005); *see also Roe-Midgett,* 512 F.3d at 875 ("independent judgment is not foreclosed by the fact that an employee's work is performed in accordance with strict guidelines"). Therefore, the Court finds that there is no genuine dispute of material

---

[5] Plaintiffs also highlight that they are not insurance adjusters and do not hold an adjuster license. While the insurance adjuster example is not perfectly analogous, it demonstrates that the work performed by Plaintiffs is administrative. 29 C.F.R. § 541.201(b) ("employee benefits," "insurance," "personnel management," and/or "legal and regulatory compliance" are administrative functions); *Julian*, No. 17-CV-957 (AJN), 2021 WL 3887763, at **10–11 (S.D.N.Y. Aug. 31, 2021) (rejecting argument that LTD "Claim Specialists do not perform a number of the tasks listed in the 'insurance adjuster claim' example," noting that the "regulations expressly provide that 'insurance' is an example of one of the 'functional areas' of work that generally qualifies as administrative work").

11

fact that Plaintiffs' work "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3).

In sum, Dearborn has met its burden of demonstrating that there are no genuine disputes of fact as to whether Plaintiffs are exempt from overtime pay under the FLSA and Maine law.

## V.  Conclusion

For the reasons explained above, this Court grants Dearborn's motion for summary judgment [76]. Because Plaintiffs' claims have been dismissed, Plaintiffs' motion for class certification [71] and Defendant's motion for decertification of collective action [80] are denied as moot. *See Premium Plus Partners, L.P. v. Goldman, Sachs & Co.*, 648 F.3d 533, 538 (7th Cir. 2011) ("It takes a representative with a live claim to carry on with a class action."); 3 William B. Rubenstein, *Newberg on Class Actions* § 7:8 (6th ed. 2022) (observing that "if a court grants a dispositive motion before class certification, it may preclude the need to rule on certification at all thereafter," and that "the emerging trend in the courts appears to be to decide dispositive motions prior to the certification motion"); *id.* at § 7:10 ("[C]ourts have been willing to rule on motions for summary judgment prior to class certification in circumstances in which it would facilitate efficient resolution of the case."); *Williams-Bell v. Brit. Standards Inst., Inc.*, 532 F. Supp. 3d 640, 652 (N.D. Ill. 2021) (first examining defendant's motion for summary judgment, granting same, and denying motion to for conditional certification of collective action as moot); *Smith v. Safety-Kleen Sys., Inc.*, No. CIV.A. 10-C-6574, 2012 WL 162206, at *7 (N.D. Ill. Jan. 18, 2012)

(first examining defendant's motion for summary judgment and only ruling on FLSA decertification after denying summary judgment). The Clerk is directed to enter judgment in Defendant's favor and against Plaintiffs and terminate the case.

E N T E R:

Dated: February 23, 2024

_____
MARY M. ROWLAND
United States District Judge